## Pleas Tucker v. The State.

No. 6179. Decided June 24, 1921.

**Carrying Brass Knuckles—Sufficiency of the Evidence.**

Where, upon trial of unlawfully carrying brass knuckles, the evidence, although conflicting, sustained the conviction, there was no reversible error.

Appeal from the County Court of Leon. Tried below before the Honorable E. B. Craig.

Appeal from a conviction of carrying brass knuckles; penalty, a fine of $100.

The opinion states the case.

No brief on file for appellant.

C. M. Cureton, Attorney General, and C. L. Stone, Assistant Attorney General, for the State.

HAWKINS, Judge.—The conviction is for unlawfully carrying brass knuckles. The State used one witness only. By him it is proved that while he and the sheriff of the county were in the woods near the farm of Jerry Betts on the morning of the 3rd of September, looking for boot-leggers, they saw Jerry Betts and appellant near some barrels which had mash in them, that they emptied one of the barrels and started away when the witness and the sheriff halted them and searched them and found in the pocket of appellant a set of metal knuckles. The witness said that Betts declared that when appellant came to the house of Betts that the latter was in the field picking cotton. The witness also said that when arrested the appellant was not going in the direction of his home.

Appellant testified that he resided about a half-mile from the home of Betts; that on the morning in question he had, while on the way to the home of Betts for the purpose of getting some water-melons and while traveling on the public road, he found a set of metal knuckles, picked them up and carried them in his hand to the home of Betts; that he found Betts and one Lewis Follie near the mail-box; that he exhibited the knuckles to them and after some conversation, started, in company with Betts, to the field after the melons. On reaching the melon patch they saw in the field some hogs, and in undertaking to drive them out they scattered, some of them going into the woods where appellant and Betts followed them, and came upon some barrels, with what they called "mash" in them; that they emptied one of the barrels and continued to pursue the hogs, and when about thirty steps from the barrels, were halted by the sheriff and the State's witness Bain, a deputy sheriff; that he was searched and the knuckles which he had found were in his possession; that he had previously exhibited them and intended to carry them home and had no intention of violating the law; that he had no connection with any still.

The witness Follie testified that he, in company with Betts, at the home of the latter, were engaged in a conversation near the mail box when the appellant approached with metal knuckles in his hand, stating that he had found them upon the public road some three hundred yards distant; that he saw the appellant and Betts go toward the field of Betts for the purpose of getting melons.

Betts testified as to the transaction and all its details after appellant came into his presence. His testimony coincides with that of the appellant.

It will be seen from the foregoing statement of the testimony that appellant and his witnesses, Follie and Betts, make out a complete defense, if their testimony is to be believed. Can we discover in the record any reason for casting doubt upon their statements. Follie and Betts testified that they were near a mail box in front of Betts' house when appellant approached them with the metal knuckles in his hand, and that the conversation detailed by them occurred at that point. The witness Betts, while on the witness stand, was asked if he did not tell the sheriff and the deputy that when the appellant came to his house on the morning of the arrest, that, he, Betts, was down in his field picking cotton. He denies this, and asserts that he told the officers that he was in the field picking cotton the evening before. The deputy sheriff was placed upon the witness stand in rebuttal by the State, and testified pointedly that Betts did not tell him at the time of the arrest that he was at his house when Pleas Tucker came up there; but did tell him that he, Betts, was down in his field picking cotton at the time the appellant came to his house.

This will probably explain why the issue of fact raised by the testimony of appellant and his witnesses, and involving a defensive theory, was disbelieved in the trial of the case. It was purely a question of fact; the issue was for the court or jury on the trial; and it having been solved against appellant, we fail to find anything in the record to authorize a reversal of the case; and the judgment of the trial court is, therefore, affirmed.

*Affirmed.*